IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2000 Session

## STATE OF TENNESSEE v. CHARLES E. SWAFFER

**Direct Appeal from the Criminal Court for Macon County**
**Nos. 99-101; 99-102     J.O. Bond, Judge**

---

**No. M2000-00058-CCA-R3-CD - Filed March 8, 2001**

---

Defendant Charles E. Swaffer was convicted by a Macon County jury of one count of Class C theft of property over $10,000 and one count of Class D vandalism over $1,000. The trial court subsequently imposed concurrent sentences of five years and three years, with Defendant to serve one year of incarceration followed by supervised probation. Defendant challenges his convictions, raising the following issues: (1) whether the trial court erred when it failed to grant a motion for a mistrial; (2) whether the evidence was sufficient to support his convictions; and (3) whether the trial court erred in applying improper enhancing factors and rejecting his mitigating factors. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Lisa Stinett, Lafayette, Tennessee; later substituted by Thomas H. Bilbrey, Assistant Public Defender, for the appellant, Charles E. Swaffer.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; Guy Yelton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On the night of September 14, 1997, the Defendant and two accomplices (Jerry Clark and Nathan Gregory) stole a Pontiac Firebird from Qualls' Auto Value Vehicle and Towing. After a while, the Firebird's engine blew up and the three went back to Qualls' property a second time. During this second trip, the three stole a utility truck and two wreckers (one red and one blue). Jerry

Clark testified that he took the utility truck, while Defendant and Gregory took the wreckers. The three drove around Westmoreland, through Hillsdale Trailer Park and through some residential yards. At some point, the utility truck blew up and they left it sitting on the side of a road, and Clark rode in the blue wrecker with the Defendant. Then, they went back to where the Pontiac was sitting and smashed the car with the wreckers. Clark and Gregory told the jury that they also used the wreckers to drive through some road construction barricades, to climb hills, drive through a mud pit and through a tobacco patch. Eventually, the three rendered the trucks inoperable by playing demolition derby with the trucks. The wreckers were left in a creek.

The next morning, Jerry Qualls (the victim), awakened to find that someone had stolen his 1987 Pontiac Firebird, two of his wreckers and one utility truck. He used the trucks in his business, Auto Value Vehicle and Towing. He immediately called the police, who later found Qualls' two wreckers and car in a creek about a mile from his home. The police found the utility truck further down the road. Qualls also testified to the damage done to each vehicle, as follows:

| Vehicle | Value Before Stolen | Value After Stolen | Damage |
| --- | --- | --- | --- |
| 1984 GMC Wrecker | $14,500 | $5,000 | $9,500 |
| 1984 Chevrolet Wrecker | $13,500 | $3,000 | $10,500 |
| 1975 Chevrolet 4x4 | $2,000 | $0 | $2,000 |
| 1987 Pontiac Firebird | $2,500 | $50 | $2,450 |
| **Total** | $32,500 | | $24,450 |

Detective Jerry Dallas of the Lafayette Police Department testified that, on September 15, 1997, he arrived at work and was "advised of a vandalism on Sneed Boulevard, which was the road under construction." Shortly thereafter, Dallas was dispatched to Cave Hollow Road, where some stolen wreckers had been recovered. When Dallas arrived at the scene, Mr. Qualls and some deputies were present. Qualls' car was found on top of a hill and the two wreckers were found in the creek. On the back of one wrecker, the deputies found a piece of one of the barricades.

Officer Matthew Looper of the Lafayette Police Department testified that, at approximately 3:30 a.m. on September 15, 1997, he was making rounds near the construction site for a new road being built in Lafayette, when he noticed that someone had damaged all of the road barricades. When Looper examined some of the wood pieces, he noticed red paint. Looper collected several pieces and turned them over to the investigation team. Looper also admitted that he did not see who had damaged the construction site.

Martha Johns testified that, on the day following the offenses, the Defendant came to her home and told her and her daughter, Nicki Rice, about the demolition derby he and some friends had with some wreckers. Johns stated that the Defendant told her that, after the demolition, they left the

wreckers in a creek. Johns admitted that she had pled guilty to charges of possession of marijuana, yet, stated she had not offered testimony against the Defendant in order to avoid jail time.

Nicki Rice, testified that the day after these crimes took place, the Defendant came to her home and told her about the crimes. Rice told the jury that Defendant told her he was involved with the stealing and destruction of some wreckers. Rice testified that the discussion only occurred between her and the Defendant. Rice admitted that her mother, Martha Johns, was in bed at this time. Detective Jimmy Hardin testified that he took the statements of Martha Johns and Nicki Rice one week after he took the Defendant's statement. Hardin explained that, in the statements of Johns and Rice, each stated that the Defendant told them about the offenses on September 19, 1997.

Johnny Matthew Johnson testified that the Defendant told him that Defendant and two other boys had stolen some wreckers. Johnson recalled that the Defendant had told him that the trucks were driven through a trailer park. Johnson also admitted that he did not believe the Defendant's story, until he saw the story in the newspaper. On cross examination, Johnson stated that he had not told Defendant's mother or anyone else that Defendant was with him on the night these criminal acts were committed. Johnson admitted that he had served time in jail, but he was not offered anything in exchange for testifying against the Defendant.

Travis Swaffer testified that he and the Defendant were cousins. Swaffer also stated that he was best friends with the co-defendants, and that he had previously lived with Nathan Gregory. Swaffer told the jury that Jerry Clark came to his home and told him that Clark and Gregory had stolen and crashed Qualls' car and wreckers. Swaffer stated that Clark told him that Clark and Nathan drove the vehicles through the Defendant's trailer park, and saw the Defendant looking out his bedroom window. Swaffer said that Clark and Nathan went racing through the trailer park. Swaffer testified that Clark never mentioned that the Defendant was with them on the night the offenses were committed.

Swaffer further testified that he had dated Nathan Gregory's mother. Swaffer told the jury that Gregory's mother told him that the Defendant was not involved in these offenses. Gregory's mother also told Swaffer that only Nathan Gregory, Jerry Clark and Derrick Sadler (Gregory's brother) were involved. Swaffer stated that, on three different occasions, the Defendant swore that he was not involved in these crimes. Nathan Gregory told Swaffer the same things. Swaffer also testified that he heard Johnny Johnson say that the Defendant was with him on the night of the offenses. He further stated that Defendant's mother and attorney were present when Johnson made this statement.

Swaffer admitted that he and the Defendant had previously been charged with burglary, for which the two were granted pretrial diversion. Swaffer testified that he had been close to both the Defendant and Nathan Gregory, but that he would not lie for either of them. Swaffer acknowledged that he was not with the Defendant on the night in question.

-3-

Kathy Coffee, the Defendant's mother, testified that Nathan Gregory and Jerry Clark came to her house and told her about what they had done to the wreckers and the car. Coffee stated that Gregory and Clark said that they knew they were going to be "sent off" for what they had done, and "that it did not matter." Coffee explained that she heard Jerry Clark say that Derrick Sadler, Clark's brother (and not the Defendant) was involved with the theft and vandalism. Coffee also testified that she would not lie for her son, if she knew that he had done something wrong.

The jury also heard testimony from Bobby Swann, the Superintendent of the road construction project being conducted by Eatherly Group, Inc. Swann testified that, on or about September 14 and 15, 1997, three sets of road barricades, valued at $2,700 per set, were totally destroyed. However, Swann admitted that he did not see anyone destroy the barricades, because it occurred after working hours.

At the close of all the proof, the jury convicted Defendant of Class C theft of property (greater than $10,000 but less than $60,000) for the vehicles belonging to Qualls. The jury also convicted Defendant of Class D vandalism (greater than $1,000 but less than $10,000) for the damage to the road signs belonging to Eatherly Group, Inc.

## ANALYSIS

### I. DENIAL OF MISTRIAL

Defendant contends that the trial court erred by failing to grant a mistrial when the State elicited improper statements from Travis Swaffer concerning a prior burglary charge, in which Defendant and Travis Swaffer were involved. We disagree.

At trial, Travis Swaffer was called to testify for the defense and he was questioned about his knowledge of Defendant's involvement in the theft and vandalism. The prosecution cross-examined Travis Swaffer and the following colloquy occurred:

> Q.     First cousins are you?
> A.     Yes, sir.
> Q.     First cousins?
> A.     Yes.
> Q.     And I believe you and him got involved in the burglary?
> A.     Yes.
> Q.     Together; is that right?
> A.     Yes, sir.
> Q.     And were convicted of it?
> A.     Yes, sir.
> Q.     That's you and Charles Swaffer I'm talking about?
> A.     Yes, sir.
> Q.     And you know that he talked with Your Honor?

-4-

At this point, defense counsel objected, on the basis that there had been no conviction in the burglary case, and the men had been granted pretrial diversion. The trial court sustained Defendant's objection, but defense counsel did not ask for a curative instruction. At the conclusion of Travis Swaffer's testimony, defense counsel moved for a mistrial, based upon the comments elicited from Swaffer; however, the record reflects that the trial court made no ruling on Defendant's motion.

The testimony of the witness who testified after Travis Swaffer is the next thing in the transcript immediately following Defendant's motion for a mistrial. There is absolutely no response to the Defendant's motion in the transcript, by either the assistant district attorney or the trial court. Obviously, this could be interpreted to be an implicit denial of Defendant's motion for a mistrial. Alternatively, it could be that any response by the State to the motion, and/or the trial court's ruling on the motion for mistrial was erroneously omitted from the record. In any event, we find that defense counsel should have at least requested a ruling on the motion for a mistrial, in order to preserve the issue for review on appeal. There is no requirement that relief be granted to a party who failed to "take whatever action might be reasonably available to prevent or nullify any harmful effect of an error." Tenn. R. App. P. 36(a). Also, it was Defendant's responsibility to include a complete record on appeal in the event the trial court did rule on his motion for a mistrial. Tenn. R. App. P. 24(b); State v. Boling, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992). Without a complete record regarding the trial court's basis for his ruling denying the motion for mistrial, or a clear explanation why no ruling was given, we presume that the trial court was correct in its ruling. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) (holding that a trial court's ruling is presumed correct in the absence of an adequate record on appeal).

Further, we note that on appeal Defendant argues that the testimony regarding his prior bad acts and his association with Travis Swaffer was not relevant evidence and was therefore inadmissible under Tenn. R. Evid. 404(b). The Defendant also argues that the evidence of his prior bad acts was prejudicial to his case and more probably than not affected the jury verdict. However, at trial Defendant did not object to this testimony based upon Rule 404(b). Rather, Defendant's objection only sought to clarify for the jury that he had been granted pretrial diversion on the burglary charge, and did not have a conviction for burglary. "An appellant cannot change theories from the trial court to the appellate court." State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). Such action constitutes waiver. State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993). However, even if the issue was not waived, we still find that any harm caused by the admission of this testimony was harmless. The State presented overwhelming proof, beyond the testimony of Travis Swaffer, from which reasonable minds could find beyond a reasonable doubt that the Defendant was guilty of the charged offenses. Thus, Defendant is not entitled to relief on this issue.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support his convictions for Class C theft of property and Class D vandalism. We disagree.

When a Defendant challenges the sufficiency of the convicting evidence on appeal, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Neither does this Court substitute its inferences for those drawn by the trier of fact from the circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305 286 S.W.2d 856, 859 (1956). The law compels this Court to grant the State the strongest legitimate view of the evidence contained in the record plus all reasonable and legitimate inferences that may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

It is upon the jury to resolve questions concerning the credibility and weight of the witnesses' testimony, not this court. State v. Darnell, 905 S.W.2d 953 (Tenn. Crim. App. 1995). A finding of guilt "shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). However, a jury conviction removes the presumption of innocence of the defendant and replaces it with one of guilt. Thus, on appeal, a convicted defendant has the burden of establishing the insufficiency of the evidence. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

These standards apply to jury convictions based upon direct evidence, circumstantial evidence, or a combination of both. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.1990). However, convictions based solely on circumstantial evidence, require facts and circumstances that are so overwhelming as to exclude any other explanation except the defendant's guilt. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987).

Defendant argues that the State failed to meet its burden of proof, since all evidence presented by the State was "circumstantial, uncorroborated and biased." We conclude that when the evidence is viewed in the light most favorable to the State, as it must be, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Defendant committed the acts of theft and vandalism involved here.

In Tennessee, it is well-settled that a defendant cannot be convicted on the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). However,

> [t]his corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Id.  In other words, "only slight circumstances are required to corroborate an accomplice's testimony."  State v. Griffis, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997).  Whether an accomplice's testimony has been sufficiently corroborated is a question for the jury. Bigbee, 885 S.W.2d at 803.

We conclude that there is evidence in this case sufficient to establish the "slight circumstances" necessary to corroborate Gregory and Clark's testimony.  First, Martha Johns and Nicki Rice testified that the Defendant came to their house and told them that he was involved in the theft and vandalism.  Second, Defendant told Johnny Johnson that he had stolen some wreckers and driven them through the trailer park.  Johnny Johnson also testified that the Defendant had asked him to say that the Defendant was with him on the night of these offenses.  The sufficiency of the corroborating evidence was a question for the jury.  State v. Bigbee, 885 S.W.2d 797, 804 (Tenn. 1994).  Here, the jury found that the testimony of these witnesses was more than sufficient to connect Defendant with the commission of the charged offenses, and to corroborate the testimony of Gregory and Clark.

Moreover, contrary to Defendant's position, the evidence presented was not entirely circumstantial.  However, even if the evidence had been entirely circumstantial, it would still be more than sufficient to sustain the convictions.  By Defendant's own admission to Nicki Rice and Johnny Johnson, which is direct evidence, Defendant committed the charged crimes and has been fairly connected to commission of the offenses. Finally, Defendant's argument that the evidence was insufficient because witnesses were "biased" goes against well settled law that the jury resolves questions concerning a witness's credibility and the weight of his/her testimony.  State v. Darnell, 905 S.W.2d 953 (Tenn. Crim. App. 1995).  Defendant is not entitled to relief on this issue.

### III. SENTENCING

On appeal, sentences imposed by the trial court are reviewed de novo with a presumption of correctness.  Tenn. Code Ann. § 40-35-401(d).  The law conditions this presumption upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  Failure of the trial court to comply with the statutory directives removes the presumption of correctness and as a result our review is de novo.  State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).  In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense and the defendant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b)(1997 & Supp.1999); Ashby, 823 S.W.2d at 169.

Defendant was convicted of Class C theft of property and Class D vandalism of property. See Tenn. Code Ann. § 39-14-103, -105(4), -408, -105(3) (1997).  The sentence for a Range I offender convicted of a Class C felony is between three and six years. Tenn. Code Ann. § 40-35-112(a)(3) (1997).  The sentence for a Range I offender convicted of a Class D felony is between two and four years. Tenn. Code Ann. § 40-35-112(a)(4).  The presumptive sentence for Class C and D

felonies is the minimum sentence in the range if there are no enhancement or mitigating factors. Tenn. Code Ann.§ 40-35-210(c) (1997). If there are enhancement, but no mitigating factors, the court may set the sentence above the minimum, but still within the range. Tenn. Code Ann.§ 40-35-210(d) (1997). Where both enhancement and mitigating factors apply, the trial court must start at the minimum sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight afforded an enhancement or mitigating factor is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and its findings are supported by the record. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

The record indicates that in determining the length of Defendant's sentences, the trial court found the following statutory enhancement factor applied: (1) Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1) (1997). The trial court also apparently considered the Defendant's untruthfulness at his sentencing hearing in deciding to enhance the Defendant's sentence. However, the trial court found that none of the enumerated mitigating factors of Tenn. Code Ann. § 40-35-113 were applicable.

Defendant does not challenge the application of enhancement factor (1), and we conclude that it was properly applied. The presentence report indicates that Defendant's prior criminal record consists of convictions for theft and spotlighting deer.

Defendant does challenge the trial court's enhancement of his sentence based upon his untruthfulness at his sentencing hearing regarding his prior record. At Defendant's sentencing hearing, the trial judge made the following comments:

> Court: With his prior activity and the way he lied here on this stand, just absolutely lied to me, that's going to get him five years on the three to six. I'm going to increase that up to five years. I'm going to increase the other one up to three years for an effective eight year sentence [sic]. . . .Get to visit on Sunday, that's the only visit you get. He doesn't need to be working, he's a liar, Sheriff, you can't trust him. He's proved that right here in this court.

While Tenn. Code Ann. § 40-35-113(13) provides a catch-all provision for the trial judge to consider "(a)ny other (mitigating) factor," Tenn. Code Ann. § 40-35-114 has no such provision for enhancement factors. Nonstatutory factors cannot be used to enhance sentences. State v. Strickland, 885 S.W.2d 85 (Tenn. Crim. App. 1993). Thus, a defendant's lack of truthfulness is not a proper consideration for increasing the length of his sentence. See Tenn. Code Ann. § 40-35-114; State v. Anderson, 985 S.W.2d 9, 20 (Tenn. Crim. App. 1997). But Cf. State v. Dowdy, 894 S.W.2d 301, 305-6 (Tenn. Crim. App. 1994) (holding a defendant's untruthfulness is probative of her prospects for rehabilitation and is a proper consideration when deciding whether to grant probation). In deciding to depart from the minimum sentence, the trial court is limited to those enhancement factors

listed in Tenn. Code Ann. § 40-35-114. State v. Dykes, 803 S.W.2d 250, 258 (Tenn. Crim. App.1990). Therefore, we find that the trial court improperly relied on Defendant's untruthfulness to enhance his sentence.

Further, the Defendant argues that the trial court should have considered several mitigating factors. He contends that because his criminal conduct neither caused nor threatened serious bodily injury, Tenn. Code Ann. § 40-35-113 (1), the trial court should have reduced his sentence. The Defendant also asserts the application of two other mitigating factors that fall under the catchall provision of Tenn. Code Ann. § 40-35-113(13). Pursuant to Tenn. Code Ann. § 40-35-113(13), the Defendant argues that the trial court erroneously refused to recognize as mitigating factors: (1) the fact that his "prior criminal record and/or activity was of a nonviolent nature;" and (2) that he was employed and had a wife and children who depended upon him for their sole support. The trial court found that neither of these mitigating factors were applicable, and we find that even if they are applicable, the factors were entitled to little or no weight.

Finally, we note that there was also adequate proof in the record to support the application of enhancement factors (6) and (8). See State v. Winfield, 23 S.W.3d 279 (Tenn. 2000) (an appellate court can find applicable an enhancement factor not found by the trial court unless there is disputed evidence on application of the enhancement factor which would require specific findings of fact by the trial court). As for enhancing factor (6), "the amount of damage to property sustained by or taken from the victim was particularly great," we find that Qualls' testimony on the amount of damage done is sufficient to establish this enhancement factor. Qualls testified that the damage to his car and trucks amounted to approximately $24,000. The trial court also made the following finding as to the damages suffered:

> Court: . . .Extraordinary amount of money involved in what he's [Defendant] done to these people. Tore this man's business all to pieces trying to earn an honest living out here. Tear up everything he's got. $35,000 [sic] is what it costs him, now he says it's three times that amount to replace it. . . . This man has lost a lot.

Defendant offered no evidence disputing the amount of the damage. Thus, we find enhancement factor (6) is applicable to the theft conviction.

Enhancement factor (8), "the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," was also applicable to Defendant's case. Id. The presentence report reflects that on February 3, 1997, Defendant was granted one year of pretrial diversion for a burglary charge. Then, on November 22, 1997, Defendant was arrested for spotlighting deer and convicted on December 5, 1997. Therefore, enhancement factor (8) is clearly applicable to both convictions.

We have found that three enhancement factors apply to the theft conviction and two to the vandalism conviction. The mitigating factors relied upon by Defendant are entitled to little, if any

weight. Therefore, the enhancing factors substantially outweigh the mitigating factors, and are sufficient to support the sentence imposed by the trial court.

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

_____

THOMAS T. WOODALL, JUDGE